Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GAROFALO,<br><br>                             Plaintiff,<br><br>        vs.<br><br>AVROBIO, INC., BRUCE BOOTH, IAN CLARK, PHILLIP DONENBERG, GAIL FARFEL, ANNALISA JENKINS, CHRISTOPHER PAIGE, and PHILIP VICKERS,<br><br>                             Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael Garofalo ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against AVROBIO, Inc. ("AVROBIO" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

- 1 -

Defendants' efforts to merge the Company with Tectonic Therapeutics, Inc. ("Tectonic") through merger vehicle Alpine Merger Subsidiary, Inc., a wholly owned subsidiary of Company, ("Merger Sub"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 30, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, pre-Merger AVROBIO shareholders are expected to own approximately 22.3% of the combined company and pre-Merger Tectonic shareholders are expected to own approximately 40.2% of the combined company. Following the closing of the Merger, the combined company will be led by the Tectonic management team. AVROBIO will be renamed Tectonic Therapeutic, Inc.

3.      Specifically, at the closing of the Merger, (a) each then-outstanding share of Tectonic common stock (including shares of Tectonic common stock issued upon conversion of Tectonic preferred stock, shares of Tectonic common stock issued upon conversion of Tectonic convertible instruments and shares of Tectonic common stock issued in the financing transactions described below) will be converted into the right to receive a number of shares of AVROBIO common stock calculated in accordance with the Merger Agreement (the "Exchange Ratio"), (b) each then-outstanding option to purchase Tectonic common stock will be assumed by AVROBIO, subject to adjustment as set forth in the Merger Agreement, and (c) each then-outstanding restricted stock unit in respect of Tectonic common stock will be assumed by AVROBIO, subject to adjustment as set forth in the Merger Agreement.

4.      The Proposed Transaction contains a Contingent Value Rights Agreement ("CVR Agreement"), providing that AVROBIO shareholders may be eligible for a Contingent Value Right ("CVR") to receive payments from AVROBIO upon the actual receipt by AVROBIO or its subsidiaries of certain contingent proceeds derived from any marketable consideration that is paid to AVROBIO as a result of the direct or indirect sale, license, assignment, transfer, conveyance, grant of any option or other disposition of certain of AVROBIO's assets, rights and interests to the extent existing prior to the closing of the Merger relating to AVROBIO's (a) plato manufacturing platform, (b) AVR-RD-01 (Fabry disease), AVR-RD-02 (Gaucher disease), and/or AVR-RD-03 (Pompe disease) research and development programs (none of which are currently active), and (c) certain intellectual property, net of certain tac, transaction costs and certain other expenses or liabilities.

5.      On February 14, 2024, in support of the Proposed Transaction, the Company and Tectonic caused to be filed with the SEC a Form S-4 attaching a Registration Statement ("Registration Statement").

6.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for AVROBIO and Tectonic, provided by AVROBIO management to the Board and the Board's financial advisor Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); and (c) the data and inputs underlying the financial valuation analyses that

purport to support the fairness opinion created by Houlihan Lokey and provided to the Company and the Board.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of Pennsylvania, and at all times relevant hereto, has been an AVROBIO stockholder.

9.     Defendant AVROBIO a clinical-stage gene therapy company, develops ex vivo lentiviral-based gene therapies to treat rare diseases following a single dose worldwide. AVROBIO is incorporated in Delaware and has its principal place of business at 100 Technology Square, Sixth Floor, Cambridge, MA 02139. Shares of AVROBIO common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "AVRO."

10.     Defendant Bruce Booth ("Booth") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

11.     Defendant Ian Clark ("Clark") has been a director of the Company at all relevant times.

12.     Defendant Phillip Donenberg ("Donenberg") has been a director of the Company at all relevant times.

13.     Defendant Gail Farfel ("Farfel") has been a director of the Company at all relevant times.

14.     Defendant Annalisa Jenkins ("Jenkins") has been a director of the Company at all relevant times.

15.     Defendant Christopher Paige ("Paige") has been a director of the Company at all relevant times.

16.     Defendant Philip Vickers ("Vickers") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Tectonic engages in the discovery of antibodies and other biologic drugs targeting GPCRs to develop novel therapies for patients inadequately served by current treatments.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Company created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.    Defendant AVROBIO, a clinical-stage gene therapy company, develops ex vivo lentiviral-based gene therapies to treat rare diseases following a single dose worldwide. Its gene therapies employ hematopoietic stem cells that are harvested from the patient and then modified with a lentiviral vector to insert the equivalent of a functional copy of the gene that is mutated in the target disease.

*The Flawed Sales Process*

24.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

25.    The Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

26.    Moreover, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given.

27.    The Registration Statement also fails to disclose what powers the Transaction Committee had to evaluate the transaction, including whether the Transaction Committee was empowered to veto a potential transaction not in the best interests of shareholders.

28.     The Registration Statement fails to adequately disclose why AVROBIO deemed there to be no conflict of interest due to Cowen and Company, LLC ("TD Cowen") being hired as a co-financial advisor for AVROBIO and then later being hired as the placement agent for Tectonic regarding the Proposed Transaction.

29.     Moreover, the Registration Statement fails to adequately disclose what compensation TD Cowen received for (i) its part in the sales process for potential strategic transaction partners; and (ii) as placement agent for Tectonic. The Registration Statement also fails to disclose whether any of TD Cowen's compensation from AVROBIO or Tectonic is conditioned on the consummation of the merger.

30.     The Registration Statement also fails to disclose adequate information regarding the hiring of Wells Fargo Securities, LLC ("WFS"); including but not limited to, the compensation WFS received pursuant to its role as co-financial advisor to AVROBIO, and any compensation WFS may have received from AVROBIO or Tectonic within the two-year period immediately preceding the Proposed Transaction.

31.     The Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Tectonic, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     Finally, the Registration Statement fails to provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On January 30, 2024, AVROBIO and Tectonic issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> CAMBRIDGE, Mass. & WATERTOWN, Mass.--(BUSINESS WIRE)--Jan. 30, 2024--  AVROBIO,  Inc. (Nasdaq:  AVRO)  and Tectonic  Therapeutic, Inc. ("Tectonic"), a privately-held biotechnology company developing GPCR (G-protein coupled receptor)-targeted therapeutic proteins, co-founded by Timothy A. Springer and Andrew C. Kruse of Harvard Medical School, today announced that the companies have entered into a definitive merger agreement to combine in an all-stock  transaction  (the  "Merger").  Under  the  terms  of  the agreement, AVROBIO will acquire 100% of the outstanding equity interests of Tectonic. Upon completion of the Merger, the combined company is expected to operate under the name Tectonic Therapeutic, Inc. and trade on Nasdaq under the ticker symbol "TECX."
>
> In connection with the Merger, Tectonic has raised or entered into agreements for a $130.7 million private placement with a syndicate of new and existing leading life  sciences  investors,  led  by  a  major  mutual  fund, TAS Partners, 5AM Ventures, EcoR1 Capital, Polaris Partners, funds and accounts advised by Farallon Capital Management, Vida Ventures, PagsGroup, and other investors. The combined company is expected to have approximately $165 million of cash and cash equivalents at closing, inclusive of the proceeds to be received in the private placement. These proceeds will be used to advance Tectonic's pipeline through multiple clinical data catalysts and are expected to fund the combined company's operations into mid-2027. The private placement is expected to close in conjunction with the Merger in the second quarter of 2024.
>
> "We are delighted to merge with AVROBIO at this important time for Tectonic. We are grateful to our investors for their commitment to our mission and to advancing our pipeline of uniquely differentiated molecules. Using biologics to unlock the therapeutic utility of targeting GPCRs which are not optimally drugged by small molecules could result in important advances for patients," said Alise Reicin, M.D., Chief Executive Officer of Tectonic. "GPCRs are central to human biology and are the target of more than 30% of all currently approved drugs. However, many GPCRs remain unexplored and have proven to be challenging targets for drug development. Our GEODe$^{TM}$ platform makes it possible to discover a broad pipeline of biologics addressing some of the most challenging receptors in the class. This transaction enhances our ability to execute on an efficient plan to advance our clinical-stage and potential best-in-class Fc-relaxin fusion protein,

TX45, as well as additional assets in our pipeline. We anticipate multiple clinical catalysts over the next three years."

"This transaction is the culmination of a comprehensive review of strategic alternatives, and our Board believes that the Merger with Tectonic is in the best interests of our shareholders," said Erik Ostrowski, interim Chief Executive Officer and Chief Financial Officer of AVROBIO. "Tectonic has unparalleled expertise in the biochemistry and biophysics of GPCRs, and a highly accomplished team poised to advance their rich pipeline of innovative therapies."

**Tectonic's Portfolio and Platform Overview**

Tectonic is developing novel GPCR-targeted therapeutic proteins. The company is prioritizing compelling GPCR targets to address indications that are not currently well-served by small molecule-based approaches. The selectivity and specificity profile of biologics is one of the most important advantages of Tectonic's approach over traditional small molecule drug discovery. However, most GPCRs have not historically been amenable to standard biologics discovery methods because of the instability and conformational heterogeneity of the GPCRs themselves. Tectonic's GEODe[TM] platform was developed to overcome the challenges of GPCR-targeted biologics discovery by combining GPCR biochemistry and receptor engineering strategies, proprietary antibody libraries and screening protocols, and structure-guided protein engineering for therapeutic candidate optimization.

Tectonic's rich pipeline addresses high-value targets across a range of indications. The first two targets are in indications with no approved therapies:

- Tectonic's lead program, TX45, a Fc-relaxin fusion protein, is a potential best-in-class agent derived from its internal protein engineering efforts. TX45 has been optimized with an aim to overcome multiple limitations associated with the natural human hormone to achieve both optimal *in vitro* (biophysical and developability), and *in vivo* (pharmacokinetic and pharmacodynamic, or "PK/PD") properties. Following completion of the ongoing dose escalation safety and PK/PD studies in healthy volunteers, development of TX45 is planned to focus on an area of very high unmet need, Group 2 Pulmonary Hypertension in patients with Heart Failure with preserved Ejection Fraction (HFpEF), which impacts over 600,000 people in the U.S.

  - Preliminary data from the Phase 1a study has demonstrated PK/PD effects for TX-45 that are consistent with a potential best-in-class profile for TX45 and monthly dosing. Additional PK/PD data from the ongoing Phase 1a study are expected in mid-2024. Phase 1b hemodynamic Proof of Concept data is expected in 2025 and Phase 2 randomized data is expected in 2026.

- Tectonic's second program addresses Hereditary Hemorrhagic Telangiectasia (HHT), an autosomal dominant disease that causes abnormal blood vessel

formation. HHT affects approximately 75,000 patients in the U.S. The target population for development is the 10-20% of patients that are considered to have severe disease because of frequent bleeding, anemia, and in some cases, the need for frequent blood transfusions. Tectonic plans to initiate human studies in this program during the Q4 2025 to Q1 2026 timeframe.

- Tectonic's third program is focused on fibrosis, using a bispecific approach to inhibit two different receptors with complementary / non-overlapping modes of action.

**About the Proposed Transaction: Financials, Management and Organization**

Upon completion of the Merger, pre-Merger AVROBIO shareholders are expected to own approximately 22.3% of the combined company and pre-Merger Tectonic shareholders are expected to own approximately 40.2% of the combined company, and in each case after giving effect to the aforementioned private placement financing. The percentage of the combined company that AVROBIO shareholders will own as of the close of the transaction is subject to adjustment based on the amount of AVROBIO net cash at the closing date, which is currently estimated to be approximately $65 million. Immediately prior to the closing of the Merger, AVROBIO shareholders will be issued contingent value rights representing the right to receive certain payments from proceeds received by the combined company, if any, related to certain pre-transaction assets of AVROBIO.

Following the closing of the Merger, the combined company will be led by Dr. Reicin and other members of the Tectonic management team. AVROBIO will be renamed Tectonic Therapeutic, Inc. and the corporate headquarters will be located in Watertown, Mass. The merger agreement provides that post-merger, one board member from AVROBIO will join the Board of Directors of the combined company.

The Merger has been approved by the Board of Directors of both companies and is expected to close in the second quarter of 2024 subject to customary closing conditions, including the approvals by the shareholders of each company, the closing of the private placement financing and other customary closing conditions.

In connection with the Merger, directors, officers, and certain shareholders of AVROBIO and Tectonic have executed support agreements, pursuant to which they have agreed to vote all of their shares of capital stock in favor of the Merger.

Leerink Partners is serving as exclusive financial advisor to Tectonic and Cooley LLP is serving as legal counsel to Tectonic. Leerink Partners and TD Cowen are acting as joint placement agents to Tectonic in connection with the private placement. Piper Sandler is acting as capital markets advisor to Tectonic. TD Cowen is serving as lead financial advisor, Houlihan Lokey is serving as co-

financial advisor, and Goodwin Procter LLP is serving as legal counsel to AVROBIO.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicates that AVROBIO insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of AVROBIO.

36.     The Registration Statement fails to provide a breakdown of the shares of Company Common Stock held by its Directors and Executives. Furthermore, the Registration Statement is equally silent as to the breakdown of the consideration each of the above-mentioned Directors and Executives members will receive pursuant to the Proposed Transaction.

37.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Names | Shares Under Outstanding Options | Shares Under Restricted Stock Units |
|---|---|---|
| **Directors:** | | |
| Bruce Booth, D.Phil | 93,712 | — |
| Ian Clark | 172,734 | — |
| Phillip Donenberg | 112,455 | — |
| Gail Farfel | 98,037 | — |
| Annalisa Jenkins, M.B.B.S., F.R.C.P. | 133,223 | — |
| Christopher Paige, Ph.D. | 93,712 | — |
| Philip Vickers, Ph.D. | 112,455 | — |
| **Executive Officers:** | | |
| Erik Ostrowski | 1,067,000 | 190,249 |
| Steven Avruch | 766,336 | 98,499 |
| Azadeh Golipour | 524,497 | 130,171 |
| Essra Ridha | 458,000 | 98,499 |

38.     Moreover, certain employment agreements with certain AVROBIO executives entitle such executives to certain severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Erik Ostrowski | 829,250 | 301,288 | 26,918 | 1,157,456 |
| Geoff MacKay[4] | — | — | — | — |
| Azadeh Golipour | 607,500 | 209,218 | 9,173 | 825,891 |
| Essra Ridha[5] | 714,380 | 171,270 | 3,671 | 889,321 |

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of AVROBIO, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

41.     The AVROBIO Board and Tectonic caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction, as follows:

a.     Adequate information as to why the Board agreed to a Proposed Transaction that did not contain a collar mechanism;

b.     Why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given;

c.     What powers the Transaction Committee had to evaluate the transaction, including whether the Transaction Committee was empowered to veto a potential transaction not in the best interests of shareholders;

d.     why AVROBIO deemed there to be no conflict of interest due to Cowen and Company, LLC ("TD Cowen") being hired as a co-financial advisor for AVROBIO and then later being hired as the placement agent for Tectonic regarding the Proposed Transaction;

e.     What compensation TD Cowen received for (i) its part in the sales process for potential strategic transaction partners; and (ii) as placement agent for Tectonic. The Registration Statement also fails to disclose whether any of TD Cowen's compensation from AVROBIO or Tectonic is conditioned on the consummation of the merger;

f.      Information regarding the hiring of Wells Fargo Securities, LLC ("WFS"); including but not limited to, the compensation WFS received pursuant to its role as co-financial advisor to AVROBIO, and any compensation WFS may have received from either AVROBIO or Tectonic within the two-year period immediately preceding the Proposed Transaction;

g.      Whether the confidentiality agreements entered into by the Company with Tectonic differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

h.      All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Tectonic, would fall away; and

i.      Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning AVROBIO and Tectonic Financial Projections*

43.     The Registration Statement fails to disclose management-prepared financial projections for the Company and Tectonic.

44.     Notably, the Registration Statement reveals that as part of its analysis, Houlihan Lokey reviewed, "reviewed certain information relating to the historical, current and future operations, financial condition and prospects of AVROBIO and Tectonic made available to Houlihan Lokey by AVROBIO and Tectonic."

- 14 -

45.     The Registration Statement should have, but fails to provide, certain information in the projections that AVROBIO management may have provided to the Board and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

46.     The Registration Statement fails to disclose any of the Company's financial projections.

47.     The Registration Statement fails to disclose any financial projections for Tectonic.

48.     The Registration Statement mentions that Tectonic relied upon the projections of the combined company in deciding to enter into the Proposed Transaction; however, the Registration Statement fails to disclose said financial projections.

49.     This information is necessary to provide the Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data for AVROBIO, Tectonic, and the Combined Company being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the exchange ratio, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Liquidation and Reverse Merger Analyses by AVROBIO's Management*

51.     The Registration Statement fails to provide material information concerning certain line items for AVROBIO Management's Liquidation Analysis provided by AVROBIO management to the Board and Houlihan Lokey and relied upon by Houlihan Lokey in its discussion with the Company regarding the Proposed Transaction.

52.     With respect to AVROBIO Management's *July 2024 Liquidation Case,* the Registration Statement fails to disclose:

    a.   The underlying inputs, metrics, and assumptions used to determine the Company's Estimated Cash Balance as of January 22, 2024;

    b.   The underlying inputs, metrics, and assumptions used to determine the Company's Cash Flow from Continuing Operations;

    c.   The underlying inputs, metrics, and assumptions used to determine the Company's Estimated 2024 Accounts Payable (G&A);

    d.   The underlying inputs, metrics, and assumptions used to determine the Company's Estimated 2024 Accounts Payable (R&D);

    e.   The underlying inputs, metrics, and assumptions used to determine the Company's 2023 Retention Costs;

    f.   The underlying inputs, metrics, and assumptions used to determine the Company's 2024 Additional Executive Team Retention Costs;

    g.   The underlying inputs, metrics, and assumptions used to determine the Company's 2024 Severance Costs;

h.  The underlying inputs, metrics, and assumptions used to determine the Company's Other/ Reserve; and

i.  The underlying inputs, metrics, and assumptions used to determine the Company's Present Value of Cash Reserve Discount.

53.  With respect to AVROBIO Management's *October 2024 Liquidation Case,* the Registration Statement fails to disclose:

a.  The underlying inputs, metrics, and assumptions used to determine the Company's Estimated Cash Balance as of January 22, 2024;

b.  The underlying inputs, metrics, and assumptions used to determine the Company's Cash Flow from Continuing Operations;

c.  The underlying inputs, metrics, and assumptions used to determine the Company's Estimated 2024 Accounts Payable (G&A);

d.  The underlying inputs, metrics, and assumptions used to determine the Company's Estimated 2024 Accounts Payable (R&D);

e.  The underlying inputs, metrics, and assumptions used to determine the Company's 2023 Retention Costs;

f.  The underlying inputs, metrics, and assumptions used to determine the Company's 2024 Additional Executive Team Retention Costs;

g.  The underlying inputs, metrics, and assumptions used to determine the Company's 2024 Severance Costs;

h.  The underlying inputs, metrics, and assumptions used to determine the Company's Other/ Reserve; and

i.   The underlying inputs, metrics, and assumptions used to determine the Company's Present Value of Cash Reserve Discount.

54.   With respect to AVROBIO Management's *Reverse Merger Case,* the Registration Statement fails to disclose:

a.   The underlying inputs, metrics, and assumptions used to determine the Company's Estimated Cash Balance as of January 22, 2024;

b.   The underlying inputs, metrics, and assumptions used to determine the Company's Cash Flow from Continuing Operations;

c.   The underlying inputs, metrics, and assumptions used to determine the Company's 2023 Full Time Equivalent Related Costs;

d.   The underlying inputs, metrics, and assumptions used to determine the Company's Full Time Equivalent Costs through May 31, 2024;

e.   The underlying inputs, metrics, and assumptions used to determine the Company's 2024 Severance Non-Executive Team;

f.   The underlying inputs, metrics, and assumptions used to determine the Company's 2023 Full time Equivalent – Executive Team;

g.   The underlying inputs, metrics, and assumptions used to determine the Company's 2024 Executive Team Change-in-Control;

h.   The underlying inputs, metrics, and assumptions used to determine the Company's Other/ Revenue;

i.   The underlying inputs, metrics, and assumptions used to determine the Company's Estimated 2024 Accounts Payable (G&A);

     j.   The underlying inputs, metrics, and assumptions used to determine the Company's Estimated 2024 Accounts Payable (R&D); and

     k.   The underlying inputs, metrics, and assumptions used to determine the Company's Implied Equity Value.

55.    This information is necessary to provide the Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey_

56.    In the Registration Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

57.    With respect to the _Tectonic – Selected Companies Analysis,_ the Proxy Statement fails to disclose:

     a.   The specific metrics observed for each comparable company; and

     b.   The inputs, metrics and assumptions used to determine the implied enterprise value reference range for Tectonic of $125.0 million to $175.0 million utilized.

58.    With respect to the _Implied Exchange Ratio Reference Range,_ the Registration Statement fails to disclose:

a.  The underlying inputs, metrics, and assumptions used to determine the implied exchange ratio reference range of 0.65897208 to 0.85154258 utilized.

59.   With respect to the *Tectonic – Illustrative M&A Transactions*, the Registration Statement fails to disclose:

a.  The specific enterprise value for each of the companies involved in the Transactions analyzed;

b.  The underlying inputs, metrics, and assumptions used to determine the implied enterprise value reference range for Tectonic of $100.0 million to $150.0 million utilized;

c.  The underlying inputs, metrics, and assumptions used to determine the implied equity value reference range for Tectonic pro forma for the private financings of $199.6 million to $249.6 million utilized; and

d.  The underlying inputs, metrics, and assumptions used to determine the implied per share reference range for Tectonic pro forma for the private financings of $9.24 to $11.56.

60.   With respect to the *Tectonic – Illustrative IPO Transactions*, the Registration Statement fails to disclose:

a.  The specific enterprise value for each of the companies involved in the Transactions analyzed;

b.  The underlying inputs, metrics, and assumptions used to determine the implied enterprise value reference range for Tectonic of $150.0 million to $200.0 million utilized;

c. The underlying inputs, metrics, and assumptions used to determine the implied equity value reference range for Tectonic pro forma for the private financings of $249.6 million to $299.6 million utilized; and

d. The underlying inputs, metrics, and assumptions used to determine the implied per share reference range for Tectonic pro forma for the private financings of $11.56 to $13.88.

61. With respect to the *Tectonic – Illustrative Private Financing Transactions*, the Registration Statement fails to disclose:

a. The specific enterprise value for each of the companies involved in the Transactions analyzed;

b. The underlying inputs, metrics, and assumptions used to determine the implied enterprise value reference range for Tectonic of $125.0 million to $175.0 million utilized;

c. The underlying inputs, metrics, and assumptions used to determine the implied equity value reference range for Tectonic pro forma for the private financings of $224.6 million to $274.6million utilized; and

d. The underlying inputs, metrics, and assumptions used to determine the implied per share reference range for Tectonic pro forma for the private financings of $10.40 to $12.72.

62. With respect to the *Illustrative Implied Exchange Ratio Reference Range*, the Registration Statement fails to disclose:

a. The underlying inputs, metrics, and assumptions used to determine the implied exchange ratio reference range of 0.58561962 to 0.77401431 shares of

AVROBIO common stock for each share of Tectonic capital stock based on the illustrative M&A transactions analysis;

b.  The underlying inputs, metrics, and assumptions used to determine the implied exchange ratio reference range of 0.73232454 to 0.92907085 shares of AVROBIO common stock for each share of Tectonic capital stock based on the illustrative IPO transactions analysis; and

c.  The underlying inputs, metrics, and assumptions used to determine the implied exchange ratio reference range of 0.65897208 to 0.85154258 shares of AVROBIO common stock for each share of Tectonic capital stock based on the illustrative private financings transactions analysis.

63.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public AVROBIO stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

67.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

68.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

69.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

70.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

71.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

72.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed

the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of AVROBIO's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of AVROBIO within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause AVROBIO to engage in the wrongful conduct complained of herein. The Individual Defendants controlled AVROBIO and all of its employees. As alleged above, AVROBIO is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate

a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.       Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 27, 2024                          **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*